IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHARON THOMAS,                    )    CASE NO. 1:12 CV 279
                                  )
                  Plaintiff,      )
                                  )
                                  )    MAGISTRATE JUDGE
        v.                        )    WILLIAM H. BAUGHMAN, JR.
                                  )
COMMISSIONER OF SOCIAL            )
SECURITY,                         )    **MEMORANDUM OPINION AND**
                                  )    **ORDER**
                  Defendant.      )

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
        A.    Commissioner's decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
        B.    Issues on judicial review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
        A.    Standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
              1.    Substantial evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
              2.    Treating physician rule and good reasons requirement . . . . . . . . -7-
              3.    Credibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
        B.    Application of standards – the decision of the Commissioner is supported by
              substantial evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
              1.    Good reasons for discounting opinions of treating physicians . . -13-
                    a.    Dr. Strohl and physical functional limitations . . . . . . . . . -14-

                    b.    Dr. Gould and mental limitations . . . . . . . . . . . . . -18-
              2.    Credibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
              3.    Past relevant work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

## Introduction

Before me[1] is an action by Sharon Thomas under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has filed an answer[3] and the transcript of the administrative proceedings.[4] Pursuant to my initial order[5] and procedural order,[6] the parties have briefed their positions[7] and have filed the supporting fact sheet[8] and charts.[9] The parties have participated in a telephonic oral argument.[10] For the reasons given below, I will find that substantial evidence supports the decision of the Commissioner and so that decision will be affirmed.

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 12.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

[6] ECF # 16.

[7] ECF # 19 (Thomas's brief); ECF # 25 (Commissioner's brief).

[8] ECF # 15 (Thomas's fact sheet).

[9] ECF # 19, Attachment 1 (Thomas's charts); ECF # 25, Attachment 1 (Commissioner's charts).

[10] ECF # 27.

## Facts

**A.      Commissioner's decision**

The administrative record shows that Thomas, who was born in 1965[11] and has a tenth grade education,[12] previously worked as a child monitor, a dietary worker, and a mail sorter.[13] She testified to having shortness of breath, dizzy spells, and night and day sweats as a result of her sarcoidosis,[14] as well as ongoing problems with coughing up blood and nose bleeds.[15] She also testified to having memory problems and to avoiding contact with other people.[16]

At step two, the Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Thomas had severe impairments consisting of sarcoidosis with aspergilloma in lung, depression, panic disorder, degenerative disc disease in the cervical spine, and osteoarthritis in the left foot and right hip.[17] But, the ALJ then

---

[11] Transcript ("Tr.") at 160.

[12] *Id.* at 43; *but see*, Tr. at 185, 197, where Thomas twice told interviewers from the Social Security Administration that she had completed 12 years of education.

[13] *Id.* at 65-66. Thomas claims she cannot remember how long she worked as a mail sorter (*see*, ECF # 19 at 3), but, based on her earnings and work report, the vocational expert ("VE") stated that she had worked at this job long enough and earned enough income for this to qualify as past relevant work. Tr. at 30.

[14] Tr. at 55.

[15] *Id.* at 56.

[16] *Id.* at 50.

[17] *Id.* at 24.

concluded that none of these severe impairments met or equaled a listing,[18] finding after a

detailed analysis that the mental impairments do not qualify.[19]

Before proceeding to step four in the sequential analysis, the ALJ made the following

finding regarding Thomas's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following additional limitations:
>
> • The claimant can only frequently push or pull bilaterally; she can frequently operate foot controls bilaterally
> • She can only occasionally climb ramps and stairs; and she can never climb ladders, ropes, or scaffolds
> • She can occasionally balance, stoop, kneel, crouch, or crawl
> • She must avoid repetitive rotation, flexion, and extension of the neck
> • She must avoid concentrated exposure to the following: extreme heat, extreme cold, humidity, excessive vibration, or hazardous moving machinery or unprotected heights
> • She is limited to simple, routine, and repetitive tasks in a low stress environment with no strict production quotas
> • She is limited to occasional interaction with the public, coworkers, or supervisors.[20]

Given that RFC, the ALJ, with the assistance of testimony from a VE, found Thomas

capable of her past relevant work as a mail sorter and, therefore, not under a disability.[21]

---

[18] *Id.* at 24-25.

[19] *Id.* at 25-26.

[20] *Id.* at 26.

[21] *Id.* at 29.

-4-

**B.     Issues on judicial review**

Thomas asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Thomas raises three issues of judicial review:

1.     The ALJ gave significant weight to the opinion of Kingman Strohl, M.D., a treating pulmonologist, and substantial weight to one of two opinions of Deborah Gould, M.D., a treating psychiatrist. The ALJ gave minimal weight to a second later opinion from Dr. Gould. Did the ALJ give good reasons in support of the weight assigned to these treating sources?[22]

2.     The ALJ found that Thomas was not credible to the extent that her statements were inconsistent with the RFC. The ALJ did not provide a unified statement in support of this finding but did extensively discuss the medical evidence elsewhere in his opinion. Does the ALJ's credibility finding have the support of substantial evidence consistent with the factors for assessing credibility set forth in the regulations?[23]

3.     The ALJ found that Thomas had the capability to perform her past relevant work as a mail sorter. Thomas performed this job for a short period of time and earned a relatively small amount of money from this work. Does substantial evidence support the ALJ's finding that this employment qualified as past relevant work?[24]

---

[22] ECF # 19 at 1.

[23] *Id.*

[24] *Id.*

## Analysis

**A.**     **Standards of review**

*1.*     *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[25]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[26]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[27]

---

[25] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[26] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[27] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2.  *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[28]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[29]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[30] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[31]

---

[28] 20 C.F.R. § 404.1527(d)(2).

[29] *Id.*

[30] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[31] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[32]  Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[33] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[34]  In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[35]

In *Wilson v. Commissioner of Social Security*,[36] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[37]  The court noted that the regulation expressly contains a "good reasons" requirement.[38]  The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[32] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[33] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[34] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[35] *Id.* at 535.

[36] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[37] *Id.* at 544.

[38] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

-8-

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[39]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[40]  It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[41]  The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[42]  It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[43]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured.  First, the ALJ must find that the treating source's opinion is not being given

---

[39] *Id.* at 546.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[44]  Second, the ALJ must identify for the record evidence supporting that finding." [45]  Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[46]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[47]  The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[48]  In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[49] or that objective medical evidence does not support that opinion.[50]

---

[44] *Wilson*, 378 F.3d at 546.

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[49] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[50] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[51]  The Commissioner's *post hoc* arguments on judicial review are immaterial.[52]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight.  In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[53]

- the rejection or discounting of the weight of a treating source without assigning weight,[54]

---

[51] *Blakley*, 581 F.3d at 407.

[52] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[53] *Blakley*, 581 F.3d at 407-08.

[54] *Id.* at 408.

-11-

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[55]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[56]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[57] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[58]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[59] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[60]  Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[61]

---

[55] *Id.*

[56] *Id.* at 409.

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend*, 375 F. App'x at 551-52.

[59] *Blakley*, 581 F.3d 399.

[60] *Id.* at 409-10.

[61] *Id.* at 410.

-12-

In *Cole v. Astrue*,[62] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[63]

### 3.    *Credibility*

In articulating reasons for discounting a claimant's credibility, the ALJ must provide enough of an assessment to assure the reviewing court that he or she has considered the relevant evidence and be specific enough to permit the court to trace the path of the ALJ's reasoning.[64] The ALJ's credibility finding is entitled to deference and should not be disturbed absent compelling reasons.[65]

### B.    **Application of standards – the decision of the Commissioner is supported by substantial evidence.**

### 1.    *Good reasons for discounting opinions of treating physicians*

As noted, the ALJ decided this case at step four, which essentially involves combining two elements – a predicate RFC finding and then a conclusory finding that the claimant, as limited by the RFC, can perform her past relevant work. Thomas challenges both of these findings as unsupported by substantial evidence.

---

[62] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[63] *Id.* at 940.

[64] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

[65] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

-13-

Thomas attacks the RFC findings on two grounds – the evaluation of the opinions of two treating physicians and the analysis of Thomas's credibility. These arguments will be analyzed separately, with the treating physician issue considered now and the credibility question addressed next. In addition, the treating physician matter itself has two components – Dr. Strohl and his opinion as to physical functional limitations and Dr. Gould's opinions as to functional limitations imposed by mental impairments. These matters are now considered *seriatim*.

a.      *Dr. Strohl and physical functional limitations*

The ALJ gave the January 2010 opinion of Thomas's treating pulmonologist, Dr. Strohl, significant, though not controlling weight.[66] He gave only minimal weight, however, to that portion of the opinion that imposed limits on standing or walking and to the opinion given in August of 2008.[67]

The ALJ states that the reasons for assigning lesser weight as to the portion of the 2010 opinion dealing with sitting and standing are that Thomas herself admitted to being able to stand for longer in a day and because "there is no objective evidence" to support this opinion by Dr. Strohl.[68] As to discounting the 2010 opinion, the ALJ states that this was

---

[66] Tr. at 29.

[67] *Id.*

[68] *Id.*

because Dr. Strohl's opined limitations were at odds with his finding that Thomas's condition was "stable."[69]

Thomas initially argues that the ALJ should not have reduced the weight given to Dr. Strohl's 2008 opinion by contrasting it to an undated statement by Thomas that she could stand for two to three hours.[70] She further maintains that the ALJ's reason for discounting Dr. Strohl's 2010 functional opinion – that it was at odds with his report that Thomas's condition was "stable" – is unreviewable by this Court because there was no citation to any such opinion of Thomas's stability.[71]

I observe first that Thomas made the statement about her ability to stand for three hours in a report she completed online on June 8, 2009, and then submitted to the Social Security Administration.[72] Thomas's contention that this information "could have been submitted well before Dr. Strohl assessed the plaintiff's RFC [in 2008]" does not appear to be substantiated in the record,[73] in that this statement appears to have been made well *after*

---

[69] *Id.*

[70] ECF # 19 at 11-12.

[71] *Id.* at 12.

[72] Tr. at 234. Although Thomas is correct that this report is not signed as such, the report was prepared online and contains the information that it was done on a public access internet connection by Sharon Denise Thomas and submitted on June 8, 2009.

[73] This also applies to Thomas's assertion that, because the date of this statement was purportedly unknown, it could not be used to undermine Dr. Strohl's 2008 opinion since "Plaintiff's condition has continued to deteriorate since 2008." ECF # 19 at 12. If it is correct that her condition has so deteriorated, then there is even greater reason for the ALJ to note that in 2009 Thomas herself assessed her functional capacity as greater than did Dr. Strohl in 2008.

Dr. Strohl gave that RFC opinion. Thus, although the ALJ could have been more complete in explaining his citation to this statement, I find that there is no error in noting that this 2009 statement by Thomas is a good reason for discounting a more restrictive conclusion by Dr. Strohl in 2008.

Similarly, while again the ALJ could certainly have been more complete in the citation to Dr. Strohl's opinion regarding the stability of Thomas's condition,[74] Dr. Strohl did opine in January, 2010, that Thomas's health status was "poor but stable."[75] Thus, as understood from the record evidence, the "good reason" given by the ALJ for discounting the functional limitations of Dr. Strohl's RFC opinion of August 28, 2010, is that these greater limitations are not consistent with Dr. Strohl's observation of January 20, 2010, that Thomas's condition is "poor but stable."

So understood, the question remains as to whether this reason as articulated is a "good" reason for discounting the August 2010 RFC opinion of Dr. Strohl, a treating source. Fundamentally, I find that it is not. Dr. Strohl's January 20, 2010, observation, as noted, was made in a section of a form entitled "health status,"[76] while the August 28, 2010, opinion was on a two-page form specifically and exclusively asking for a "medical source statement" as

---

[74] My frustration here is that the ALJ did not support a key finding with any clear direct citation to the record such as would permit judicial review of that finding without the need for a scavenger hunt through the transcript to locate the exact evidence relied upon by the ALJ. While the ALJ gave enough information so that the Court's search would ultimately be successful, that is obviously not the preferred model for how decisions should be communicated to claimants or how judicial review should proceed.

[75] Tr. at 622.

[76] *Id.* at 622.

-16-

to the "patient's physical capacity."[77] Significantly, although the January 2010 observation does contain some statements on functional limitations,[78] the August 2010 opinion contains – for the first time – Dr. Strohl's opinions as to many additional functional issues, as well as explanations of the medical findings that support the limitations listed and a notation that Thomas has been prescribed with a breathing machine.[79]

In short, the ALJ's reliance on Dr. Strohl's single use of the word "stable" in a different context than functional evaluation in order to discount a later, far more detailed functional limitations opinion given in precisely that context is not a "good" reason for discounting the latter opinion.

That said, however, Thomas at the oral argument has conceded that any error here would be harmless because even if Dr. Strohl's functional opinion had been given controlling weight, the net effect would have been to find Thomas capable of sedentary work, rather than of light work, assuming that the mental RFC is not disturbed. As such, because the change would not have resulted in a different outcome for Thomas, the error here does not warrant a remand.[80]

---

[77] *Id.* at 692-93.

[78] *Id.* at 623.

[79] *Id.*

[80] *Pechatsko v. Comm'r of Soc. Sec.*, 369 F. Supp. 2d 909 (N.D. Ohio 2004).

-17-

b.    *Dr. Gould and mental limitations*

As concerns limitations from Thomas's mental impairments, the ALJ acknowledged that Dr. Gould was the treating physician in this area and, further, gave "substantial weight" to the GAF score of 70 given by Dr. Gould in her January 2010 opinion.[81] But, the ALJ ascribed only "minimal weight" to Dr. Gould's two later opinions for the reason that Dr. Gould's "progress noted show improvement, not deterioration, and thus conflict with her earlier opinion that was given for clinical evaluation, not as a disability report."[82]

Thomas here argues that the ALJ's reasons for discounting Dr. Gould's later RFC opinions were not sound because the later, more restrictive RFC opinions accord with the treatment notes which reveal "hills and valleys" in Thomas's condition.[83] Stated differently, Thomas contends that Dr. Gould's notes show Thomas has brief episodes of "mild improvement" as part of an ongoing "struggl[e] with severe depression without significant relief, despite medication."[84] Thomas maintains that the later opinions of Dr. Gould should be given even greater weight than her initial GAF test score because those later opinions reflect Dr. Gould's judgment after having treated Thomas for a significant amount of time.[85]

---

[81] Tr. at 29.

[82] *Id.*

[83] ECF # 19 at 13.

[84] *Id.* at 14.

[85] *Id.*

Thomas also contests the view that lesser weight should be given to opinions provided on a disability report rather than on a clinical form.[86]

The ALJ here followed the basic rubric for assessing the opinion of a treating source: (1) identify the source as a treating source; (2) assign a specific weight to the opinions of that source; and (3) if the weight is less than controlling, state a good reason for the lesser weight. Although Thomas asserts that any progress shown in Dr. Gould's later notes should be viewed as temporary "hills" and not as conclusive proof of some permanent "improvement," she does not deny that such evidence of progress exists. As such, undeniable evidence of later improvement as regards Thomas's mental impairment plus a GAF score of 70 indicating only mild symptoms represent good reasons for the ALJ's decision to assign only minimal weight to Dr. Gould's later RFC opinions.

Therefore, I find substantial evidence supports this finding of the Commissioner.

## 2.   *Credibility*

Thomas here essentially argues that the ALJ cherry-picked or misinterpreted isolated or out of context statements by Thomas or Dr. Strohl to discount her credibility.[87] The Commissioner in response argues that in addition to contrasting Thomas's complaints with allegedly inconsistent statements from Thomas and Dr. Strohl, the ALJ also evaluated Thomas's complaints against the clinical evidence, which the ALJ analyzed at some length.[88]

---

[86] *Id.*

[87] ECF # 19 at 15-18.

[88] ECF # 25 at 14.

Indeed, the ALJ's opinion contains an extensive discussion as relates to Thomas's claims of the results of a walk test administered in 2006,[89] another walk test in 2009,[90] a bronchoscopy in 2009,[91] and three sets of x-rays,[92] as well as results from Thomas's mental examination in 2009 by the consultative examiner, Michael B. Leach, Ph.D., and the observations of Dr. Gould.[93] After this detailed and lengthy examination of the objective clinical findings, the ALJ concludes that the "objective testing does not support the severity of the plaintiff's symptoms." As a final point, only then does the ALJ discuss the allegedly inconsistent statements that are the basis for Thomas's cherry-picking arguments here.

Accordingly, even if Thomas is correct that the ALJ did not place her comments fully in context before concluding that they were inconsistent with her complaints, the record shows that the decision to discount her credibility rests on a broader foundation of inconsistencies with many objective clinical findings. As such, and inasmuch as Thomas makes no mention of these findings in her argument here, I find that the Commissioner's decision to discount Thomas's credibility is supported by substantial evidence.

---

[89] Tr. at 27.

[90] *Id.*

[91] *Id.*

[92] *Id.* at 27-28.

[93] *Id.* at 28.

-20-

### 3.    *Past relevant work*

As noted, Thomas argues that the job as a mail clerk does not qualify as past relevant work.[94] The record does not contain any information on the exact number of months Thomas worked this job or of specific monthly earnings, but the record does contain Thomas's statement that she worked the job on a full-time basis in a single year, 1999, earning $1,778.51.[95] The ALJ concluded that this amount of income earned during a single year meant that the mail sorter job qualified as past relevant work.[96]

Thomas contends that this job was merely off-and-on employment, and did not last long enough to qualify as substantial gainful activity.[97] The regulation states that work experience is relevant when it was done for a period of time long enough to learn to do the job.[98]

As the Commissioner observes,[99] Thomas appears to concede in her brief that the amount she earned as a mail sorter reflected that she worked at this position for at least two months,[100] which the regulations provide is long enough to learn to do an unskilled job.[101]

---

[94] ECF # 19 at 18.

[95] Tr. at 181.

[96] *Id.* at 30.

[97] ECF # 19 at 18-19.

[98] *See*, 20 C.F.R. § 404.1565(a).

[99] ECF # 25 at 15.

[100] ECF # 19 at 18.

[101] 20 C.F.R. § 404.1568(a). Unskilled jobs can generally be learned in thirty days.

-21-

Here, the VE classified the mail sorter job as unskilled with the additional qualifier that some specific preparation was required, although the job could be learned in a short period of time.[102]

Given that there was no contrary evidence in the record that supports Thomas's view that the job was merely off-and-on,[103] but there was the evidence cited above permitting the logical conclusion that this job was past relevant work, I find that the decision of the ALJ in this regard was supported by substantial evidence.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Thomas had no disability. Accordingly, the decision of the Commissioner denying Thomas disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.

Dated:  March 26, 2013                              s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge

---

[102] Tr. at 66.

[103] And Thomas had the burden of proof at step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).